IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEWAYNE GEORGE GREEN,     *
                                 *
    Plaintiff,         *     CIVIL ACTION NO. 13-00253-B
                                 *
vs.                          *
                                 *
CAROLYN W. COLVIN,       *
Commissioner of Social Security,*
                               *
    Defendant.         *

<u>ORDER</u>

Plaintiff Dewayne George Green (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On July 7, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   <u>**Procedural History**</u>

    Plaintiff protectively filed an application for a period of

disability and disability insurance benefits on November 6, 2009.[1]  (Tr. 143).  Plaintiff alleged that he had been disabled since April 1, 1997, due to "gastrointestinal disorder, anxiety disorder, diabetes, right arm, [and] right shoulder."  (Id. at 143, 147).  Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Kim McClain-Leazure (hereinafter "ALJ") on October 25, 2011.  (Id. at 26).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (Id. at 29).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 52).  On November 15, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 22).  The Appeals Council denied Plaintiff's request for review on March 25, 2013.[2]  (Id. at 1).  The parties waived oral argument (Doc.

---

[1] In order to qualify for disability insurance benefits, a claimant must be found to be disabled on or before his date last insured.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).  In this case, Plaintiff's date last insured is June 30, 2002.  (Doc. 16 at 12).  Thus, Plaintiff must show that he was disabled on or before that date.  Because Plaintiff's onset date is April 1, 1997 (id.), the Court's analysis is limited to the relevant time period between April 1, 1997 (the alleged onset date) and June 30, 2002 (the date last insured).

[2] As discussed herein, Plaintiff submitted additional evidence to the Appeals Council in the form of a letter dated December 9, 2011, from Plaintiff's treating psychologist, Dr. Robert DeFrancisco, Ph.D., which the Appeals Council considered before denying Plaintiff's request for review.  (Tr. 5).

19), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

> **1. Whether the ALJ erred in not giving controlling weight to the opinions of Plaintiff's treating psychologist, Dr. Robert DeFrancisco?**
>
> **2. Whether the Appeals Council erred in failing to properly review the opinions of Plaintiff's treating psychologist, Dr. Robert DeFrancisco?**

## III. Factual Background

Plaintiff was born on November 30, 1960, and was fifty years of age at the time of his administrative hearing on October 25, 2011. (Tr. 26, 116). Plaintiff graduated from college with a degree in management and worked as a corrections officer from 1985 to 1996 and as a debt collector in 1997. (Id. at 30-31, 35, 148).

Plaintiff testified that he stopped working because he had problems getting along with co-workers and supervisors and because he could not cope with the stress of working. (Id. at 34). According to Plaintiff, when he worked, he had severe stomach cramps, headaches, and an inability to concentrate. (Id. at 36-37).

Plaintiff testified that he has a wife and two children,

but he avoids people and likes to spend his days alone in the woods and watching sports on television. (Id. at 42, 46, 49). Plaintiff stated that he tries to take no medication. (Id. at 43).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.  Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of April 1, 1997, through his date last insured of June 30, 2002, and that, through the date last insured, he had the severe impairments of bipolar disorder, impulse control disorder, and personality disorder. (Tr. 16). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: no contact with the public;

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

occasional contact with supervisors and co-workers; changes in
the workplace should be introduced gradually; time off task can
be accommodated by normal breaks; Specific Vocational
Preparation (SVP) no greater than two; and preferably
repetitive, simple, and routine tasks. (Id. at 18). The ALJ
also determined that while Plaintiff's medically determinable
impairments could reasonably be expected to produce the alleged
symptoms, his statements concerning the intensity, persistence
and limiting effects of the alleged symptoms were not credible
to the extent that they were inconsistent with the RFC. (Id. at
19).

Given Plaintiff's RFC, the ALJ found that Plaintiff was
incapable of performing his past work as a corrections officer,
or collector. (Id. at 21). However, utilizing the testimony of
a VE, the ALJ concluded that considering Plaintiff's residual
functional capacity for a range of work at all exertional
levels, as well as his age, education and work experience, there
were other jobs existing in the national economy that Plaintiff
was able to perform, such as "horticultural worker" (heavy,
unskilled, SVP 2), "commercial industrial cleaner" (medium,
unskilled, SVP 2), "garment bagger" (light, unskilled, SVP 1),
and "garment folder" (light, unskilled, SVP 2). (Id. at 22).
Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

Also pertinent to this appeal are the findings made by the

ALJ which informed his decision that Plaintiff is not disabled. In assessing whether Plaintiff met or medically equaled a Listing, the ALJ made the following relevant findings:

> The severity of the claimant's mental impairments did not meet or medically equal the criteria of any mental impairment listings, including listing 12.04 governing affective disorders and 12.08 governing personality disorders. . . . In activities of daily living, the claimant had moderate restriction. The claimant apparently worked as a correction officer for the State of Alabama until 1997 (Exhibits 2D, 3E, and 5E). He testified that the job was stressful for him, and the State of Alabama ordered him disabled due to behavioral issues and gastric problems. He also testified that he was fired from his job as a collector for a furniture company, in part, because he could not handle the pressures of the job. He worked for a short time as a flight crew trainee in 2000; however, he reportedly had to resign due to stress (Exhibits 2D, 1E, and 12E). On January 21, 2011, Robert A. DeFrancisco, Ph.D., a psychologist who has seen the claimant periodically since 1995, provided a sworn statement indicating that the claimant had marked restriction in daily living as of June 2010 (Exhibit 10F).
>
> On the other hand, Dr. DeFrancisco saw the claimant no more than once a year during the period from the alleged onset day of April 1, 1997 through the date last insured of June 30, 2002, and he usually noted that the claimant was doing well (Exhibit 4F). On April 16, 1999, Dr. DeFrancisco noted that he was willing to provide a letter indicating that the claimant was competent to fly.
>
> In social functioning, the claimant had moderate difficulties. In Dr. DeFrancisco's

sworn statement, he stated that the claimant had a very erratic way of interacting with others, was very forthright and moody, and had been involved in some altercations with coworkers and supervisors when he worked as a correction officer (Exhibit 10F). Dr. DeFrancisco indicated that the claimant had marked restriction in social functioning that precluded him from interacting favorably with coworkers or supervisors as of June 2002, and he should not have been required to interact with the public in any way. The claimant testified that he had trouble getting along with coworkers, supervisors, and others in his jobs as a correction officer, collector, and flight crew trainee.

Again however, the treatment notes indicate otherwise. Dr. DeFrancisco saw the claimant no more than once a year during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002, and he usually noted that the claimant was doing well (Exhibit 4F). On April 16, 1999, Dr. DeFrancisco noted that the claimant was as "chipper" as ever.

With regard to concentration, persistence, or pace, the claimant had moderate difficulties. In Dr. DeFrancisco's sworn statement, he stated that the claimant had problems with concentrating and focusing when he worked as a correction officer (Exhibit 10F). Dr. DeFrancisco indicated that the claimant could not have handled the routine demands of an ordinary workweek as of June 2002. The claimant testified that he had problems with impulsivity and difficulty concentrating *in his job as a correction officer*; he was fired from his job as a collector for a furniture company, in part, because he could not handle the pressures of the job; and he had to resign as a flight crew trainee in 2000 due to stress.

Again, Dr. DeFrancisco saw the claimant no more than once a year during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002, and he usually noted that the claimant was alert, oriented, and doing well (Exhibit 4F). On May 8, 2000, Dr. DeFrancisco noted that the claimant was much less stressed now that he was out of the Department of Corrections (DOC).

As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which had been of extended duration.

Because the claimant's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

(Tr. 17-18).[5] Also, in assessing Plaintiff's RFC, the ALJ made

the following relevant findings:

The claimant alleges that he worked as a correction officer for the State of Alabama until 1997. He experienced difficulties with impulsivity and concentration; gastric problems; and trouble getting along with inmates, coworkers, supervisors. His treating psychologist told him that he needed to stay away from stress or his condition could get much worse. The State of Alabama ordered him disabled due to his behavioral issues and gastric problems. He was also fired from his job as a collector for a furniture company because he could not

---

[5] The ALJ also found that the evidence failed to satisfy the "paragraph C" criteria of Listings 12.04 (governing affective disorders) and 12.08 (governing personality disorders). (Tr. 18). Plaintiff does not challenge the ALJ's finding that he failed to meet or medically equal any Listing.

handle the pressures of the job and had conflicts with others, including judges in small claims court. He worked for short time as a flight crew trainee in 2000; however, he had problems with coworkers and supervisors and had to resign due to stress. I specifically note here that the occupations of correctional officer, collection and flight crew are by definition high stress jobs. . . .

The claimant was seen by Dr. DeFrancisco four times during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002 (Exhibit 4F). On March 4, 1998, Dr. DeFrancisco noted that although the claimant still could not work at the DOC, he was doing well and not taking any medication. Dr. DeFrancisco stated that the claimant appeared to be continually grandiose but was actually quite harmless.

On April 16, 1999, Dr. DeFrancisco noted that the claimant felt like he could not work at the DOC and that he had basically disabled the claimant from working there (*at the Department of Corrections*) (Exhibit 4F). The claimant was noted to be a little grandiose; however, his alertness, orientation, chipperness, contentment, and reasonableness were also noted. Then unlike someone who is unable to handle stress or is disabled, the claimant said he would *need a letter from Dr. DeFrancisco indicating that he was competent to fly planes*. Dr. DeFrancisco stated that the claimant was doing quite well and that he was willing to provide a letter indicating that the claimant was competent to fly.

On May 8, 2000, Dr. DeFrancisco noted that the claimant continued with anxiety and work-related gastric problems, and the claimant continued to feel like he could not work for the DOC (Exhibit 4F). The claimant's mental alertness, orientation,

and reasonable adjustment were noted. Dr. DeFrancisco stated that the claimant was much happier and much less stressed now that he was out of the DOC.

On May 29, 2001, Dr. DeFrancisco noted that the claimant was very grandiose, had a personality disorder, and continued with a marginal existence (Exhibit 4F). However, the claimant's stability and orientation were also noted. Dr. DeFrancisco expressed his lack of surprise that the claimant had unsuccessfully tried to work for an airline.

On January 21, 2011, Dr. DeFrancisco provided a sworn statement (Exhibit 10F). He indicated that he had periodically treated the claimant since October 1995. He stated that the claimant had a very erratic way of interacting with others, was very forthright and moody, had inflated self-esteem, experienced bipolar symptoms, had problems with concentrating and focusing, and had been involved in some altercations with coworkers and supervisors when he worked as a correction officer. He diagnosed the claimant with impulse control disorder and bipolar disorder, and opined that the claimant was disabled from his job as a correction officer. The claimant was subsequently determined to be disabled from his job as a correction officer. Dr. DeFrancisco indicated that, as of June 2002, the claimant had marked restriction in daily living, had marked restriction in social functioning that precluded him from interacting favorably with coworkers or supervisors, should not have been required to interact with the public in any way, and could not have handled the routine demands of an ordinary workweek.

The basic mental demands of competitive, remunerative, unskilled work includes the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; make simple work-related

decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting (SSRs 85-15 and 96-9p). In light of the claimant's mental impairments during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002, he had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no contact with the public; occasional contact with supervisors and coworkers; changes in workplace should be introduced gradually; time off task can be accommodated by normal breaks; SVP no greater than two; and preferably repetitive, simple, and routine tasks. The record shows that the claimant had the capacity to perform the above range of unskilled work. Dr. DeFrancisco saw the claimant no more than once a year during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002[;] the claimant took no psychotropic medication during this period, and Dr. DeFrancisco usually noted that the claimant was alert, oriented, and doing well (Exhibit 4F). On April 16, 1999, Dr. DeFrancisco noted that the claimant was as "chipper" as ever, and he was willing to provide a letter indicating that the claimant was competent to fly. On May 8, 2000, Dr. DeFrancisco noted that the claimant was much happier and much less stressed now that he was out of the DOC.

I cannot find the claimant's allegations to be fully credible. It is contrary to common sense that a person who cannot handle stress well would be competent to fly an airplane. This fact alone diminishes the claimant's credibility. At the hearing, the claimant admitted that he did not disclose his past history of mental health problems when he applied for the position of a flight crew trainee in 2000. Moreover, while the

claimant testified that he has not worked as an airline pilot since 2000, he apparently indicated that he was working as a commercial pilot when he was hospitalized after a gunshot wound in October 2009 (Exhibit 2F). In fact, there is no real evidence the claimant ever flew a plane.

As for opinion evidence, only some weight is given to Dr. DeFrancisco's sworn statement (Exhibit 10F). Although Dr. DeFrancisco is a treating medical source, his progress notes during the period from the alleged onset date of April 1, 1997 through the date last insured of June 30, 2002 (Exhibit 4F), only show that the claimant was disabled from doing his past job as a correction officer. They do not show that the claimant was disabled from doing all work. Indeed, Dr. DeFrancisco seemed to qualify the answers in his sworn statement as pertaining to the DOC for the most part (Exhibit 10F).

(Id. at 19-21) (emphasis in original).

Following the ALJ's decision that Plaintiff was not disabled during the relevant period, Plaintiff submitted a letter to the Appeals Council from Dr. DeFrancisco dated December 9, 2011, in which Dr. DeFrancisco noted his disagreement with the ALJ's decision and stated his opinion that, at the time that he determined that Plaintiff was unable to continue to work as a correctional officer (in 1995), it was also his opinion at that time that Plaintiff was completely disabled from all work. (Id. at 274, 291). Dr. DeFrancisco expressed his belief that the ALJ had misinterpreted his treatment notes regarding his references to the Plaintiff doing

well and regarding his certification that the Plaintiff was competent to fly an airplane. (Id. at 291). The Appeals Council found the additional evidence did not provide a basis for changing the ALJ's decision. (Id. at 2). The Court now considers the foregoing in light of the record in this case and the issues on appeal.

1. **Issues**

   a. **Whether the ALJ erred in not giving controlling weight to Plaintiff's treating physician's opinions?**

Plaintiff argues that the ALJ erred in not giving controlling weight to the opinions of his treating psychologist, Dr. Robert DeFrancisco, contained in his sworn statement dated January 2011. In the January 2011 sworn statement, Dr. DeFrancisco opined that in June 2002, Plaintiff could not handle the routine demands of an ordinary work week and, thus, could not work.[6] (Tr. 281). The Commissioner counters that the ALJ properly discounted Dr. DeFrancisco's opinion because it is inconsistent with the record evidence in this case (more precisely, with Dr. DeFrancisco's own treatment records) related to the period in question, *i.e.*, the period from the onset date

---

[6] Specifically, Dr. DeFrancisco stated: "I do not think [Mr. Green] can handle the routine demands of an ordinary work week with his problems." (Tr. 281). When asked if that was his opinion of Plaintiff's condition in June 2002, Dr. DeFrancisco stated, "Yes, it is." (Id. at 282).

of April 1, 1997 through the date last insured of June 30, 2002.[7]

According to the Commissioner, while the record evidence supports Plaintiff's claim that he was unable to perform his work *as a corrections officer/prison guard* during the period in question, the record does not support Plaintiff's claim that he was unable to perform *all work activity* prior to the expiration of his insured status in 2002. (Doc. 17 at 10). Having carefully reviewed the record in this case,[8] the Court finds that Plaintiff has failed to prove that he was disabled on or before his last insured date.

As noted *supra*, a claimant seeking disability benefits must prove that he was disabled on or before his last insured date, which in this case is June 30, 2002. Moore, 405 F. 3d at 1211. As a preliminary matter, the Court notes that although Dr. DeFrancisco opined in January 2011 that, in June 2002, Plaintiff could not handle the routine demands of an ordinary work week and, thus, could not work, the record evidence pertaining to

---

[7] The parties are in agreement that Plaintiff's claim in this case centers on the period of disability from April 1, 1997 through June 30, 2002. (Doc. 16 at 2-5, 12).

[8] As discussed herein, the record in this case relating to Plaintiff's claim is extremely sparse. State Agency reviewer, Dr. Ellen Eno, Ph.D., noted that there was insufficient evidence upon which to complete a Psychiatric Review Technique. (Tr. 253). For its part, the Court notes that, because the Plaintiff's claim relates only to his mental condition from 1997 to 2002, the Court must base its decision on the record evidence related to that time period.

Plaintiff's mental condition during the period in question (from April 1997 to June 2002) is extremely limited. Specifically, the record consists of four pages of treatment notes from Dr. DeFrancisco wherein he records four annual visits by Plaintiff for the purpose of completion of a State disability form. (Tr. 226-29).

Generally speaking, "[a]n administrative law judge must accord substantial or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary." Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985) (citations and internal quotation marks omitted). "The requisite 'good cause' for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Id. "[T]he weight afforded a treating doctor's opinion must be specified along with 'any reason for giving it no weight, and failure to do so is reversible error.'" Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion

of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

Additionally, a retrospective medical opinion, such as "a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date," is to be discounted if it is inconsistent with the medical evidence that predates the last insured date. Mason v. Commissioner of Soc. Sec., 430 F. Appx. 830, 832 (11th Cir. 2011). In other words, a retrospective diagnosis is not entitled to deference "unless corroborated by contemporaneous medical evidence of a disabling condition" during the insured period. Id.

The record in this case shows that Dr. DeFrancisco provided a sworn statement dated January 21, 2011, in which he indicated that he had begun treating Plaintiff in 1995 for problems that Plaintiff was having at work as a prison guard for the State Department of Corrections. (Tr. 274). Specifically, Dr. DeFrancisco stated that Plaintiff was having problems at work as a result of altercations with the warden and his co-workers, that Plaintiff had a very erratic way of interacting with others, and that in the 1990s, he diagnosed Plaintiff with bipolar disorder and impulsive control disorder and determined that Plaintiff was unable to work. (Id. at 274-75, 278). Dr. DeFrancisco further opined that in June 2002 (prior to the date Plaintiff was last insured), Plaintiff would not have been able

to handle the routine demands of an ordinary work week and that Plaintiff remains "psychiatrically disabled and unable to work." (Id. at 281, 284).

At issue in this case is Dr. DeFrancisco's opinion that, *in June 2002* (prior to the date last insured), Plaintiff would not have been able to handle the routine demands of an ordinary work week with his problems. (Id. at 281). The ALJ found that Dr. DeFrancisco's opinion is inconsistent with his own treatment records, and thus, it was only entitled to "some weight." (Id. at 21). Having reviewed the record at length, the Court agrees.

Contrary to Dr. DeFrancisco's opinion (in the January 2011 sworn statement) that in June 2002, Plaintiff was unable to perform *any work* (id. at 281-82), his treatment notes do not reflect that he ever opined, during the time at issue, that Plaintiff could no longer perform any work. For instance, in his treatment notes dated November 28, 1995, Dr. DeFrancisco stated, "[Mr. Green] may very well indeed have problems working for the Department of Corrections and he may need to seek *other employment*;" "he does seem to have a rather demanding personality [and] seems to be rather controlling *but I don't know that any of this precludes him from working*." (Id. at 223-24) (emphasis added). In addition, as discussed herein, Dr. DeFrancisco's treatment notes dated April 16, 1999, reflect that, after being disabled from working as a corrections

officer, Plaintiff pursued a career as an airplane pilot, and Dr. DeFrancisco indicated his willingness to certify that Plaintiff was competent to fly airplanes. (Id. at 227-28). These treatment notes are inconsistent with Dr. DeFrancisco's opinion, expressed more than a decade later, that Plaintiff was precluded from *all work* prior to January 2002, the date last insured. (Id. at 281-82).

Furthermore, as the ALJ articulated, Dr. DeFrancisco's treatment records show that, during the relevant period from the alleged onset day of April 1, 1997 through the date last insured of June 30, 2002, Dr. DeFrancisco saw Plaintiff only four times, that is, once a year for four years, for the express purpose of updating Plaintiff's State disability form.[9] (Id. at 226-29). Other than those four visits, Plaintiff sought no treatment whatsoever from Dr. DeFrancisco, or any other medical provider, during the period in question, despite his claim that his mental health conditions were debilitating. Moreover, as the ALJ found and the record reflects, Plaintiff took no psychotropic medication during this period. (Id. at 20, 226). This lack of treatment belies Plaintiff's claim of debilitating symptoms

---

[9] In treatment notes dated March 24, 1998, Dr. DeFrancisco stated, "George came in for [a] scheduled appointment today. . . . I have not seen him in about a year to a year and a half. He comes in for a disability update to complete out a form. I accomplished this for him. . . . I filled out his form and he will call me on a PRN basis." (Tr. 226).

prior to June 2002.

Also, as the ALJ articulated, on the four occasions that Dr. DeFrancisco did see Plaintiff during the relevant period, he noted on all but one occasion (the May 2001 visit) that the claimant was doing well. (Id. at 226-27). In his treatment notes dated March 24, 1998, Dr. DeFrancisco stated, "George came in for [a] scheduled appointment today. Today's session indicates that George is doing well. . . . He's not on any medication at this particular time. He appears to be continually grandiose but actually [is] quite harmless." (Id. at 226).

At Plaintiff's next visit more than one year later, on April 16, 1999, Dr. DeFrancisco noted, "George comes in for his annual mental health check-up. He continues to feel like he cannot work at the Department of Corrections. This has caused him a lot of heartache in the past. . . . Other than that, he is doing quite well. . . Mentally he's alert, oriented, as chipper as ever. He is a little grandiose still but other than that he seems to be fairly content and reasonable. . . . At any rate, he is doing well and we will see him on his yearly check-up again." (Id. at 227). It is at this visit that Dr. DeFrancisco indicated his willingness to provide Plaintiff a letter certifying that Plaintiff was competent to fly airplanes. (Id.). Specifically, Dr. DeFrancisco stated in his treatment

records, "[Mr. Green] may need a letter from me indicating he is competent to fly.  I told him I would do this if he should need one."[10]  (Id.).

Plaintiff's next visit was more than one year later, on May 8, 2000, at which time Dr. DeFrancisco noted, "[f]irst time I have seen George since April 16, 1999. Basically he continues with the same problems as we have been seeing him before. Anxiety and GI problems as related to work.  He continues to feel as if he cannot work for the DOC. . . George continues to work with his flight school and he is much happier and much less stressed now that he is out of the DOC."  (Id. at 228).

At his last visit during the relevant period, on May 29, 2001, Plaintiff reported to Dr. DeFrancisco that he was unable to find work with an airline.  (Id. at 229).  Dr. DeFrancisco commented that he was not surprised that Plaintiff was unable to secure a job with an airline, stating that Plaintiff is "somewhat grandiose."[11]  (Id.).  Dr. DeFrancisco further noted that Plaintiff was stable and oriented.  He instructed Plaintiff

---

[10] With respect to this particular treatment note, the Court agrees with the ALJ's observations that the occupation of airplane pilot is "by definition [a] high stress job[]" and that it "is contrary to common sense that a person who cannot handle stress well would be competent to fly an airplane."  (Tr. 19-20).

[11] Dr. DeFrancisco also commented that Plaintiff "continues with a marginal existence."  (Tr. 229).

to return as needed.  (Id.).

The record reflects that Plaintiff did not return to see Dr. DeFrancisco until three years later, on May 20, 2004, which was two years *after* the expiration of his insured status.  Dr. DeFrancisco's treatment notes reflect that the purpose of this visit was the completion of the State disability form.  (Id. at 230). During this visit, Dr. DeFrancisco noted that Plaintiff left the Department of Corrections in late 1995/early 1996 with a diagnosis of personality disorder, that he tended to be very moody and anxious, and that he had difficulties with personal relationships and intense anger. (Id.). Dr. DeFrancisco opined that "I don't think he can handle stress related activities, certainly as it is applied to his former job as a correction officer.  I certainly wouldn't feel comfortable with him being in charge of inmates at this point.  He is non-psychotic, however he does have a pervasive personality disorder as stated." (Id.).

As the ALJ found, Dr. DeFrancisco's treatment notes during the relevant time period reflect that Plaintiff was stable, doing well without medication, and competent to handle high stress jobs such as flying airplanes. In fact, Dr. DeFrancisco's treatment notes reveal that it was not until April 2010 that Dr. Francisco indicated that Plaintiff "now . . . should apply for social security" disability.  (Id. at 232).  Specifically, Dr.

DeFrancisco noted on April 30, 2010, "[t]his is the first time I have seen George in several years. . . . He recently got shot and can not use his right hand very much. . . . He is filing for social security as well. . . . George has always been as stated mentally and physically sick to some degree. This has not changed at all. He remains unstable to work in a correctional officers job and I think now he also should apply for Social Security and I think he has done that."[12] (Id. at 232).

In sum, the record supports the ALJ's finding that the retrospective opinions expressed in Dr. DeFrancisco's January 2011 sworn statement are inconsistent with his contemporaneous treatment records from the period in question; thus, they are not entitled to deference. See Mason, 430 F. Appx. at 832. The fact that Dr. DeFrancisco's retrospective opinions came *nine years* after the relevant treatment period further diminishes their reliability. While the record supports Dr. DeFrancisco's opinion that Plaintiff was unable to perform his past work as a corrections officer/prison guard prior to June 2002, it does not support his opinion that Plaintiff was incapable of performing *any work* prior to June 2002, the date last insured.

---

[12] Dr. DeFrancisco's claim in his sworn statement that he "encouraged [Plaintiff] to apply for social security back in the 90's" (Tr. 280-81) is likewise inconsistent with this statement in his April 30, 2010, treatment records that "I think now he also should apply for Social Security." (Id. at 232).

Having carefully reviewed the record in this case, the Court finds that the ALJ gave appropriate weight to Dr. DeFrancisco's opinions and that the ALJ's conclusion that Plaintiff was not disabled prior to the expiration of his insured status is supported by substantial evidence. Simply put, the record is devoid of any evidence demonstrating that Plaintiff had a disabling condition during the insured period. Therefore, Plaintiff's claim is without merit.

### B. Whether the Appeals Council erred in failing to properly review the opinions of Plaintiff's treating psychologist, Dr. Robert DeFrancisco?

Plaintiff argues that the Appeals Council erred in failing to properly review the opinions of Dr. DeFrancisco set forth in the letter[13] submitted to the Appeals Council dated December 9, 2011. (Doc. 16 at 9-10; Tr. 291). According to Plaintiff, in Dr. DeFrancisco's December 9, 2011 letter, he disputes the ALJ's finding that the opinions set forth in Dr. DeFrancisco's January 2011 sworn statement are "at odds" with his treatment notes.[14]

_____

[13] Plaintiff refers to the letter as a sworn statement; however, the letter is unsworn. (Tr. 291-92).

[14] In the December 9, 2011, letter, Dr. DeFrancisco states that it is common for patients with Plaintiff's diagnoses to appear chipper and well-adjusted on examination, and it simply means that they are responding to treatment and avoiding the situations and stress which cause them difficulty. (Tr. 291; Doc. 16 at 10). Dr. DeFrancisco also states in the letter that it should not be inferred that it was his opinion that Plaintiff was only disabled from his past work as a corrections officer,

(Doc. 16 at 10).  While Plaintiff acknowledges that the Appeals Council considered Dr. DeFrancisco's December 2011 letter, he argues that the Council erred in concluding that it did not provide a basis for changing the ALJ's decision.  (Id.; Tr. 2). The Commissioner counters that the additional evidence presented to the Appeals Council not warrant reversal and does not change the fact that substantial evidence supports the ALJ's decision. (Doc. 17 at 14).  Having carefully reviewed the record in this case, the Court finds that the Appeals Council did not err in finding that Dr. DeFrancisco's December 2011 letter did not provide a basis for changing the ALJ's decision.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new,

_____

but rather, it was his opinion at that time (1995) that Plaintiff was "not able to work on a consistent basis" anywhere. (Tr. 291).  Dr. DeFrancisco also attempts to explain his certification in 1999 that Plaintiff was competent to fly airplanes, stating that while he certified Plaintiff as competent to fly, he did not certify that he could handle the stress accompanying such a job. (Id.).  The Court rejects that argument as contrary to common sense. A certification by a psychologist that his patient is competent to fly an airplane would necessarily encompass the psychologist's opinion that the patient could handle the stress accompanying that task.  Dr. DeFrancisco was not asked to provide his opinion concerning Plaintiff's competency to operate the controls and instruments of the aircraft. His certification clearly referred to Plaintiff's mental competency to handle the stress and pressure of the job.

material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (llth Cir. 1986).

In this case, Plaintiff properly submitted the December 2011 letter from Dr. DeFrancisco to the Appeals Council as it was generated *after* the ALJ's decision dated November 15, 2011. In the letter, Dr. DeFrancisco takes issues with the ALJ's interpretation of his treatment notes during the time period in question. The Court has reviewed Dr. DeFrancisco's December 2011 letter and finds that the Appeals Council did not err in evaluating the new evidence.

At the outset, the Court notes that Dr. DeFrancisco's treatment records speak for themselves. Therefore, Dr. DeFrancisco's retrospective comments and opinions in the December 2011 letter, which are inconsistent with his contemporaneous treatment records created years earlier, were

properly rejected.  See Mason, 430 F. Appx. at 832 (a retrospective medical opinion is to be discounted if it is inconsistent with the medical evidence that predates the claimant's last insured date); Crafton v. Commissioner of Soc. Sec., 2014 U.S. Dist. LEXIS 23580 (M.D. Fla. Feb. 3, 2014) (Appeals Council did not err in its evaluation of Plaintiff's new evidence where the evidence constituted a retrospective opinion that was not consistent with the medical evidence that pre-dated the claimant's last insured date and, thus, was not material).

As in the preceding cases, the undersigned in this case has identified no medical evidence in the record pre-dating June 30, 2002, the date last insured, that would corroborate Dr. DeFrancisco's retrospective opinions regarding Plaintiff's mental limitations during the period in question, nor has Plaintiff identified any such corroborating evidence.  To the contrary, Dr. DeFrancisco's statements and opinions set forth in the December 9, 2011 letter are merely cumulative of the statements and opinions contained in his January 2011 sworn statement, which the Court has already found were properly rejected as inconsistent with his contemporaneous treatment notes during the relevant period.

Therefore, for each of these reasons, the December 2011 letter submitted to the Appeals Council does not warrant

reversal, and Plaintiff's claim must fail.

**V.      Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **30th** day of **September, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**
